Anton A. Ewing (not an attorney)
2175 Cowley Way
San Diego, CA 92110
619-719-9640 (do not telemarket)
Email: anton@antonewing.com

**FILED**
Jan 28 2026
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY s/ ArminCortez DEPUTY

Plaintiff pro se

**UNITED STATES FEDERAL DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Anton A. Ewing,<br>Plaintiff,<br><br>vs.<br><br>YASSER SHALABI, an individual,<br>HAWAII ISLAND EXPERIENCES, LLC,<br><br>Defendants | Case No.: '26CV0547 LL MMP<br><br>**COMPLAINT**<br>**1. 47 U.S.C. §227 (TCPA)**<br>**2. PC §637.2 / 632.7 (CIPA)** |

Plaintiff Anton A. Ewing (herein "Plaintiff" or "Ewing") brings this Complaint for money damages and injunctive relief, demanding a trial by jury, against Defendant Yasser Shalabi, an individual (herein "Shalabi") and his company, HAWAII ISLAND EXPERIENCES, LLC (doing business as Consolidated Funding), to stop said defendants from violating the Telephone Consumer Protection Act and the Telemarketing Sales Rule by sending telemarketing text messages and calling with prerecorded artificial voice messages



26cv

to Plaintiff's personal residential cellular phone (ending in -9640), which is registered on www.donotcall.gov (the National Do Not Call Registry) without permission and without consent of Plaintiff. Plaintiff Ewing, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and where indicated, upon information and belief, including investigation conducted by Plaintiff[1]. Plaintiff is suing to stop each Defendant's practice of sending text messages using an "automatic telephone dialing system" ("ATDS") to the cellphones of consumers in San Diego county without their prior express consent by obtaining an injunction prohibiting violation of the TCPA; (2) stop each Defendant's practice of sending repeated text messages to consumers on the National Do Not Call Registry, which includes Plaintiff; (3) obtain an injunction prohibiting each Defendant's continued illegal efforts to send text messages and make harassing calls to consumers, including Plaintiff; and (4) obtain redress for Plaintiff Ewing who was injured by each Defendant's conduct.

## PARTIES

1. Plaintiff Anton A. Ewing is a natural person as defined by 47 USC §153(39), and a resident of San Diego, California at all times relevant to this action.

---

[1] See 21cv-01764-GPC-BLM at PageID.1 in ECF No. 1, *Trujillo vs. Encore Live, LLC*

Plaintiff was present in San Diego at all times relevant to this action and was also the owner and sole user of personal, private residential cellular phone number 619-719-9640[2].

2. Plaintiff has been repeatedly called and texted by Defendant Shalabi without consent, permission or authority, all in direct violation of express commands by Plaintiff to stop, cease and desist and by virtue of registration on www.donotcall.gov of the personal private residential number 619-719-9640. The FCC has ruled that a text is treated the same as a call under the TCPA. Whether a defendant sends a text or makes a call, both are violations.

3. Defendant SHALABI is a person that conducts business throughout this District, in San Diego, California. Defendant SHALABI is a "person" as defined by as defined by 47 USC §153(39). Shalabi lives at 1039 11th Avenue, Honolulu, HI 96816.

4. Defendant SHALABI is located in Hawaii for his business mail.

5. Defendant HAWAII ISLAND EXPERIENCES, LLC ("HAWAII ISLAND EXPERIENCES, LLC.") is a Hawaii limited liability company, is a person

---

[2] For clarity, this number is not a hardwired landline. Defendant's attorney is expressly on notice.

defined by 47 USC §153(39) and is owned, operated and managed by Defendant Yasser Shalabi. HAWAII ISLAND EXPERIENCES, LLC does business in San Diego and has purposefully availed itself of the benefits and protections of California law by telemarketing into San Diego. Defendant Consolidated Funding is located in Sacramento, California.

## JURISDICTION AND VENUE

6. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"). This is not a "diversity" of citizenship case. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012)

7. This Court has personal jurisdiction over each Defendant since each Defendant conducts business in this District and specifically marketed to Plaintiff within this District relating to the business that they conduct here. Venue is proper in this District because Plaintiff resides in this District and the events leading to this case occurred in this District. Defendants also expressly contested to jurisdiction here by signing the settlement agreement that contained a venue and jurisdiction clause promising that they would subject themselves to this Court's authority and power.

8. Plaintiff is informed and believes that at all relevant times, Defendant Shalabi was acting as an agent and/or employee of each of Defendant

HAWAII ISLAND EXPERIENCES, LLC or that Defendant HAWAII ISLAND EXPERIENCES, LLC was acting as the agent of Shalabi and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants. Plaintiff is informed and believes that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants[3]. Hawaii Island Experiences, LLC is also liable under *respondeat superior* rules of responsibility.

9. The Court has ancillary and supplemental jurisdiction, in its discretion, over the attendant state law claims that are part of a common nucleus of operative facts. Plaintiff is suing for violation of CIPA, PC §632.7 et seq. – illegal cell phone recording.

10. Defendant SHALABI and Defendant HAWAII ISLAND EXPERIENCES, LLC. have purposefully directed its activities into California. Area code 619 is entirely within San Diego County.

---

[3] 21-cv-01204-H-WVG, PageID.3, ECF No. 1, *Benitez vs. United Debt Settlement, LLC* (SD CA 7/1/2021)

## INTRODUCTION

11. This is, *inter alia*, a *Summers v. Tice*, 33 Cal. 2d 80, 199 P.2d 1 (1948) case. That is, both defendants named herein are liable for the TCPA violations alleged herein. If they cannot prove, at trial, which of them made the injurious calls, then they are both liable. In *Summers v. Tice:*

a. Plaintiff's action was against both defendants for an injury to his right eye and face as the result of being struck by bird shot discharged from a shotgun. The case was tried by the court without a jury and the court found that on November 20, 1945, plaintiff and the two defendants were hunting quail on the open range. Each of the defendants was armed with a 12 gauge shotgun loaded with shells containing 7 1/2 size shot. Prior to going hunting plaintiff discussed the hunting procedure with defendants, indicating that they were to exercise care when shooting and to "keep in line." In the course of hunting plaintiff proceeded up a hill, thus placing the hunters at the points of a triangle. The view of defendants with reference to plaintiff was unobstructed and they knew his location. Defendant Tice flushed a quail which rose in flight to a 10-foot elevation and flew between plaintiff and defendants. Both defendants shot at the quail, shooting in plaintiff's direction. At that time defendants were 75 yards from plaintiff. One shot struck plaintiff in his eye and another in his upper lip. Finally it was found by the court that as the direct result of the shooting by defendants the shots struck plaintiff as above mentioned and that defendants were negligent in so shooting and plaintiff was not contributorily negligent. *Summers v. Tice*, 33 Cal. 2d 80, 82-83, 199 P.2d 1, 1-2 (1948)

12. The named defendants in this matter are just like the defendants in *Summers vs. Tice*. Only they know who made the injuring shot and the tortious calls. The law holds them both liable if they refuse to confess who did it. Only



26cv

significant forensic discovery with ferret out the telemarketing snake in this matter.

13.Plaintiff further alleges that both defendants are jointly and severally liable for the acts of eachother. They acted in concert and conspired together, thus they are jointly and severally liable for the acts alleged herein. Shalabi is the Manager, CEO and statutory agent for service of HAWAII ISLAND EXPERIENCES, LLC. HAWAII ISLAND EXPERIENCES, LLC is the alter ego of Shalabi because HAWAII ISLAND EXPERIENCES, LLC, *inter alia*, fails to obey criminal laws and fails to follow any corporate policies and procedures. See 47 USC §227. The violation of 47 USC §501, by violating "what has been made unlawful" within §227, is a criminal act. No person can use an entity to engage in criminal activity devoid of personal liability therefor.

14.Plaintiff further alleges that Defendant Shalabi is liable for the acts of Defendant HAWAII ISLAND EXPERIENCES, LLC because said corporation is committing a criminal act by violating 47 USC §501 by telemarketing Plaintiff. No person, including Defendant Shalabi, may set up a company, entity or other corporation to commit criminal acts without taking on personal liability for said criminal acts. The master is liable for the acts of its servants. *Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 939

(9th Cir. 2017); *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6584 (2013) (noting that a "broad range of agency principles" may be employed in seeking to hold a principal liable for an agent's TCPA violations); *Jones v. Royal Admin. Servs.*, 887 F.3d 443, 448 (9th Cir. 2018). Congress has recently submitted a bill to increase the penalty for violating the TCPA from a misdemeanor to a felony. *See also* 15 USC §6102 et seq.

15.Plaintiff further alleges that Defendant HAWAII ISLAND EXPERIENCES, LLC is the agent of Shalabi and the alter ego of Shalabi, and therefore Shalabi is personally liable for the TCPA violations of HAWAII ISLAND EXPERIENCES, LLC. Rule 8 says that there must be a short and plain statement. This is the short and plain statement.

**HISTORICAL BACKGROUND**

16. According to YouMail which records and tracks telemarketing calls, in 2022, Americans received over 50 billion telemarketing calls[4]. That is over one billion calls per week. The federal court is the only place that is able to stop these harassing calls. There are 298 million cell phones in the US[5].

---

[4] https://www.cnet.com/tech/mobile/tired-of-those-annoying-spam-calls-heres-how-to-stop-them/

[5] https://www.statista.com/topics/2711/us-smartphone-market/

That translates to 170 robocalls per cell phone per year. Plaintiff barely files one case per month. In the last year, Plaintiff has only filed 8 other cases.

17. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

18. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). Plaintiff has registered his phone on the DNC registry.

19. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

20. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

21. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

22. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

23. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data. It is unfortunate that making a complaint to the FCC actually results in nothing being done. The FCC simply does not have the resources to go after telemarketers.

24. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, Cutting off Robocalls (July 22, 2016), statement of FCC chairman.[6]

[6] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

## SPECIFIC FACTUAL DETAILS OF THIS CASE ABOUT THESE DEFENDANTS

25. In recent years a troubling trend has surfaced in property management, cold calling consumers soliciting their services without their consent, including calls that are being placed to consumers that registered their phone numbers on the DNC.

26. This property management telemarketing trend has resulted in consumers, including this Plaintiff, being bombarded by unsolicited solicitation calls without their (or his) consent and in violation of the TCPA, and in violation of CIPA.

27. In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), aff'd, 755 F.3d 1265 (11th Cir. 2014).

28. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and

invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

29. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

30. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. §64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

31. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" Id. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

32."'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. §

64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

33. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future. *Id.*

34. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

## COMMON ALLEGATIONS

35. Defendant SHALABI is a property management broker, selling his services throughout San Diego County. SHALABI is not licensed by the California Department of Financial Protection and Innovation to actually sell, market or broker property management services to California residents. Shalabi and his employee staff are just a group of telemarketers that scam California



26cv

residents out of tens of thousands of dollars every day. Shalabi is also not licensed by the California Department of Real Estate nor does he hold a CFL license. Shalabi is required to be licensed and bonded.

36.Defendant SHALABI conducts telemarketing campaigns to sell his services to consumers throughout southern California. As part of those campaigns, unsolicited text messages are sent to cell phones of consumers across the state by and/or on behalf of Defendant SHALABI.

37. In placing unsolicited text messages to consumers, Defendant Shalabi sends or causes to be sent, multiple text messages to phone numbers that are registered on the DNC, such as Plaintiff's number (-9640). Shalabi sent Plaintiff multiple text messages for solicitation purposes without consent.

38. In response to these text messages (and the calls), Plaintiff Ewing files this lawsuit seeking injunctive relief requiring Defendant SHALABI to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to Plaintiff Ewing and costs ($405 filing fee plus service of process fees).

39. Plaintiff Ewing heard a very clear "bubble popping" type sound followed by a rather long pause before the artificial-voice prerecorded message began to play on the call. Plaintiff was required to hit "1" to be transferred to a live

operator. This happened on each and every call that is the subject of this lawsuit.

40. Plaintiff and neither Defendant Shalabi nor HAWAII ISLAND EXPERIENCES, LLC have a pre-existing business relationship. Plaintiff has never been a customer or client of either Defendant Shalabi or HAWAII ISLAND EXPERIENCES, LLC's business. Plaintiff directly and explicitly told either Defendant Shalabi or HAWAII ISLAND EXPERIENCES, LLC to stop calling.

41. Specifically, the hardware and software used by either Defendant Shalabi or HAWAII ISLAND EXPERIENCES, LLC has the capacity to store and/or produce numbers using a random or sequential number generator, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Either Defendant Shalabi or HAWAII ISLAND EXPERIENCES, LLC's automated dialing equipment includes features substantially similar to a predictive dialer in that it is capable of sending numerous text messages simultaneously, without human intervention. The distinct bubble-popping sound and the long silent pause were, in Plaintiff vast experience, the clear indication that an ATDS robo-dialer was used by either Defendant Shalabi or HAWAII ISLAND EXPERIENCES, LLC for the calls.

42. The five (5) text messages were sent by or on either Defendant Shalabi or HAWAII ISLAND EXPERIENCES, LLC's behalf and with its knowledge and approval. Defendant SHALABI knew about the messages, received the benefits of the messages, directed that the messages be sent, and/or ratified the sending of the messages. The text messages were generic which indicates an ATDS was used by either Defendant Shalabi or HAWAII ISLAND EXPERIENCES, LLC. There were 18 calls in addition to the five texts.

43. All five of the text messages were sent via an ATDS at the direction and oversight of either Defendant Shalabi or HAWAII ISLAND EXPERIENCES, LLC. Said Defendants knew about, directed, ratified, and benefitted from the solicitation text messages.

44. On information and belief and based on Plaintiff's vast knowledge and experience with these types of telemarketers, the equipment used to send the texts at issue has the capacity to use a random or sequential number generator in the process of storing numbers from a produced list for texting

at a later date.[7] Plaintiff alleges that this is exactly what Defendant SHALABI has done.

45. The equipment at issue, in this case, also has the capacity to produce telephone numbers using a random or sequential number generator. Specifically, the texting software, by virtue of being inextricably linked to a computer operating system, has the capacity to generate random or sequential telephone numbers. One of either Defendant Shalabi or HAWAII ISLAND EXPERIENCES, LLC's employees, Yasser Shalabi, expressly admitted that they were using an "auto dialing computer" to make the calls and send out the text messages in order to get California residents to buy their property management programs.

46. By sending unsolicited text messages as alleged herein, either Defendant Shalabi or HAWAII ISLAND EXPERIENCES, LLC has caused Plaintiff actual harm. This includes the aggravation, nuisance, and invasions of privacy that result from the placement of such text messages, in addition to the wear and tear on his phone, interference with the use of his phone, consumption of battery life, loss of value realized for monies he paid to his

---

[7] 21-cv-01646-L-BLM, PageID.6, ECF No. 1, *Williams vs. Zeeto, LLC* (SD CA 9/20/21)

AT&T carrier for the receipt of such messages, and the diminished use, enjoyment, value, and utility of his telephone plan. Furthermore, either Defendant Shalabi or HAWAII ISLAND EXPERIENCES, LLC sent the messages knowing they trespassed against and interfered with Plaintiff's use and enjoyment of, and the ability to access, his phone, including the related data, software, and hardware components.

47. FCC regulations promulgated under the TCPA specifically prohibit either Defendant Shalabi or HAWAII ISLAND EXPERIENCES, LLC from using an artificial or prerecorded voice to call Plaintiff's Number for the purpose of advertising or telemarketing absent Plaintiff's prior express written consent. See 47 C.F.R. § 64.1200(a)(2)[8]

**PLAINTIFF EWING'S ALLEGATIONS**

48. Either Defendant Shalabi or HAWAII ISLAND EXPERIENCES, LLC. called or texted Plaintiff Ewing 18 times on the following dates:

a. January 22, 2026 from 520-681-2934 at 2:12 PM
b. January 22, 2026 from 520-681-2934 at 2:13 PM
c. January 22, 2026 from 520-681-2934 at 3:11 PM

---

[8] 21-cv-02040-CAB-KSC, PageID.4 in ECF No. 1, *Johnson vs. Digital Media Solutions*.

d. January 22, 2026 from 520-681-2934 at 10:18 AM

e. January 21, 2026 from 520-681-2934 at 8:23 AM

f. January 21, 2026 from 520-681-2934 at 5:38 PM

g. January 21, 2026 from 520-681-2934 at 2:12 PM

h. January 20, 2026 from 520-681-2934 at 11:15 AM

i. June 5, 2025 from 707-940-9451 at 1:29 PM

j. June 6, 2025 from 707-940-9451 at 11:49 AM

k. June 7, 2025 from 707-940-9451 at 7:33 AM

l. June 8, 2025 from 707-940-9451 at 3:21 PM

m. June 9, 2025 from 707-940-9451 at 1:22 PM

n. June 10, 2025 from 707-940-9451 at 7:59 AM

o. June 11, 2025 from 707-940-9451 at 9:36 AM

p. June 12, 2025 from 707-940-9451 at 2:25 PM

q. June 13, 2025 from 707-940-9451 at 11:53 AM

r. June 14, 2025 from 707-940-9451 at 2:13 PM

49. Replying "STOP" did not work. Plaintiff received additional subsequent text messages from either Defendant Shalabi or HAWAII ISLAND EXPERIENCES, LLC. Importantly, Plaintiff became enraged on each of the 18 telephone calls making very clear that the caller must never

telemarket him ever again. And yet, Defendant SHALABI keeps calling and texting.

50. Spoofing the prefix of 719, or any other local prefix spoof, is a standard ATDS robo-dialing technique or practice that all telemarketers use to attempt to increase the likelihood that a called person will answer the call. Fortunately, since the STIR/Shaken[9] laws were made effective, this scam is now significantly attenuated.

51. Either Defendant Shalabi or HAWAII ISLAND EXPERIENCES, LLC was calling to sell its property management scams. Either Defendant Shalabi or HAWAII ISLAND EXPERIENCES, LLC's controlled and hired employee Yasser Shalabi who stated that the business uses special software to obtain their telemarketing calling list to upload into the autodialer system. Yasser Shalabi admitted that their telephone dialing system works automatically and autonomously without human intervention.

52. Plaintiff Ewing registered his cell phone number on the DNC on February 16, 2012, for the express purpose that he would not receive unsolicited calls or text messages. Plaintiff Ewing has gone even further to pay for various

[9] https://www.fcc.gov/call-authentication

web pages informing the world of telemarketers to not call him or else they will be sued. Moreover, Plaintiff has expressly informed over one hundred TCPA defense attorneys, in writing, across the nation to inform their clients to not call Ewing for solicitation. At the bottom of each email Plaintiff also has the following warning which he has sent to thousands of persons:

a. "This email does not authorize you to call me for SOLICITATION. This email is not consent to TELEMARKET my phone number. Any calls without express authorized consent shall be treated as a violation of 47 USC §227. All calls are recorded."

53. Plaintiff Ewing's phone number is not associated with a business and is used for personal, private residential use only. Notwithstanding, mixed use phones are still fully protected.

54. The five text messages that Plaintiff received are solicitations encouraging the purchase of Defendant SHALABI's services. Plaintiff is not suing for illegal recording regarding the text messages. Plaintiff is suing for illegal recording, by Defendants, without consent, of the oral calls.

55. The ten text messages were sent by or on behalf of either Defendant Shalabi or HAWAII ISLAND EXPERIENCES, LLC. The five text messages were sent at either Defendant Shalabi or HAWAII ISLAND EXPERIENCES, LLC direction, command and control.

56. Either Defendant Shalabi or HAWAII ISLAND EXPERIENCES, LLC expressly and overtly controlled the exact generic content of the five text messages.

57. The five text messages did not address Plaintiff by name. Thus they were sent by, with and through an automatic telephone dialing system or robo-dialer.

58. Said dialing system has the capacity to store and/or randomly generate phone numbers and to dial those numbers without human intervention.

59. Plaintiff Ewing never provided his phone number or his consent to either Defendant Shalabi or HAWAII ISLAND EXPERIENCES, LLC to receive any solicitation from them or on their behalf. Prior to receiving the ten text messages, Plaintiff had never visited any location or internet web page owned, used, or controlled by either Defendant Shalabi or HAWAII ISLAND EXPERIENCES, LLC.

60. The unauthorized solicitation telephone text messages that Plaintiff received from either Defendant Shalabi or HAWAII ISLAND EXPERIENCES, LLC, as alleged herein, have harmed Plaintiff Ewing in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's

hardware (including the phone's battery) and the consumption of memory on the phone.

61. Section 310.3(b) of the TSR prohibits providing substantial assistance or support to telemarketers when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates the TSR. *United States v. Dish Network LLC*, No. 09-3073, 2017 U.S. Dist. LEXIS 85543, at *299 (C.D. Ill. June 5, 2017)

62. The phone calls placed to Plaintiff's cellular telephone were placed via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. §227 (a)(1) as prohibited by 47 U.S.C. § 227 (b)(1)(A). At one or more instance during these calls, either Defendant Shalabi or HAWAII ISLAND EXPERIENCES, LLC. utilized an "artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

63. Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

64. Defendant's calls were placed to telephone number assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

65. Plaintiff is not a customer of Defendant's services and has never provided any personal information, including his cellular telephone number, to either

Defendant Shalabi or HAWAII ISLAND EXPERIENCES, LLC for any purpose whatsoever. In addition, Plaintiff told Defendant SHALABI at least once to stop contacting him and Plaintiff has been registered on the Do-Not-Call Registry for at least thirty (30) days prior to Defendant SHALABI contacting him. Accordingly, Defendant SHALABI never received Plaintiff' "prior express consent" to receive calls using an automatic telephone dialing system or an artificial or prerecorded voice on his cellular telephone pursuant to 47 U.S.C. § 227(b)(1)(A).[10]

66. Plaintiff did not have a personal relationship with either Defendant Shalabi or HAWAII ISLAND EXPERIENCES, LLC at any point in time.[11]

67. Upon information and belief, either Defendant Shalabi or HAWAII ISLAND EXPERIENCES, LLC did not make the telephone solicitations in error.

68. When Plaintiff answered calls from either Defendant Shalabi or HAWAII ISLAND EXPERIENCES, LLC, he heard a prerecorded message and had to wait on the line to be transferred to a live representative.

---

[10] 21-cv-01204-H-WVG at PageID.4 in ECF No. 1, *Benitez vs. United Debt Settlement, LLC.*
[11] 21-cv-01123

69. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, ¶ 136 (2003).

70. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

71. In a recent decision, the Supreme Court interpreted the term "automatic telephone dialing system" and held that "[t]o qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Facebook, Inc. v. Duguid*, 141 S.Ct. 1163 (2021) (*emphasis added*).

72. In *Duguid*, the Supreme Court provided an example of such systems, stating: "For instance, an autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list. It would then store those numbers to be dialed at a later time." *Id.* at 1171-72 fn. 7.

73. The Sixth Circuit has recognized a distinction between automated calls placed by a dialing system and fielded by a live agent, and agentless prerecorded voice calls: "Congress drew an explicit distinction between 'automated telephone calls that deliver an artificial or prerecorded voice message' on the one hand and 'calls place by 'live' persons' on the other." *Ashland Hosp. Corp. v. Serv. Employees Int'l Union, Dist. 1199 WV/KY/OH*, 708 F.3d 737,743 (6th Cir. 2013). Similarly, the FTC has observed that "prerecorded calls are by their very nature one-sided conversations, and if there is no opportunity for consumers to ask questions, offers may not be sufficiently clear for consumers to make informed choices before pressing a button or saying yes to make a purchase." 73FR 51164-01, 51167 (Aug. 29, 2008).

74. Plaintiff has studied the code used to program predictive dialers and other similarly-functioning autodialers in the past, with the assistance of experts like Jeff Hansen and software engineers fluent in Java, and have found that such autodialers, when used in automated mode, execute code that relies upon random or sequential number generation to both store and produce numbers to be dialed by the dialer. For instance, a common "parser" used in SMS blasters and predictive dialing coding integrates the following open-source Apache code into an autodialing dialing platform:

```
730 if (!this.recordList.isEmpty()) {
731 this.recordNumber++;
732 final String comment = sb == null ? null : sb.toString();
733 result=newCSVRecord(this,this.recordList.toArray(Constants.E
MPTY_STRING_ARRAY), comment,
734 this.recordNumber, startCharPosition);
735 }
736 return result;
737 }
```

75. These lines of code, and specifically the "++" in line 731, represent an operator token that generates sequential numbers as part of a loop. This loop is used to select which number from the CSV file, will be dialed, and produce that number to the dialer using a CSV parser. Such programs can dial thousands of consumers in mere seconds, without any human intervention whatsoever, based on whatever abandonment rate is targeted by the operator of the dialing platform. The sequential number generator in the code above is executed in the process of mass predictive dialing. The program cannot function, and therefore cannot dial any phone numbers at all, without this sequential number generator.

76.Plaintiff alleges that Defendant HAWAII ISLAND EXPERIENCES, LLC used a predictive dialing system with the similar capacity to autodial numbers as shown above. Functionally, that is simply how predictive dialers work. They rely on random or sequential number generators to instruct the data set to produce telephone numbers to the dialer. Without this key component, a dialing campaign would require an agent to manually place the call, through organic decision making, or as was the case in *Duguid v. Facebook*, through some other organic one-to-one triggering event that instructs the dialer to place the call. Plaintiff will not be able to demonstrate whether the code for Defendant's (HAWAII ISLAND EXPERIENCES, LLC) dialing system contains such random or sequential number generators without doing discovery and obtaining the code for the dialing platform. Plaintiff makes these allegations on information and belief based on the volume of calls he received, the fact that there was a pause at the beginning of the calls, and the fact that the calls were spoofed, which are all indicia that they were autodialed with a predictive dialer.

77.The problem with these known realities is that because Plaintiff does not and could not ever have access to Defendant HAWAII ISLAND EXPERIENCES, LLC's proprietary code, which is in its sole possession, Plaintiff cannot allege with any more specificity that the system's code

contains such language. However, based on detailed discussions with experts and years of litigation and expertise surrounding such technology, Plaintiff has a legitimate and sufficient good faith basis to make these allegations, and assert that if the system is a traditional predictive dialer as alleged, then it will have some variation on the coding that is described herein, which will undoubtedly include either random or sequential number generators that are being executed in conjunction with storing and dialing the telephone numbers, including the dialing of Plaintiff's phone number. In Defendant HAWAII ISLAND EXPERIENCES, LLC's overzealous attempt to market its services, it placed (and continues to place) phone calls via ATDS and prerecorded voice calls to consumers who never provided consent to call and to consumers having no relationship with either Defendant.

## FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227(b)(1)(A) and (c)(5))**
**(Against Defendant SHALABI and Defendant HAWAII ISLAND EXPERIENCES, LLC.)**

78. Plaintiff Ewing repeats and realleges paragraphs 1 through 77 of this Complaint and incorporates them by reference.



26cv

79. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

80. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

81. Defendant SHALABI or Defendant HAWAII ISLAND EXPERIENCES, LLC. violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry participants (including Ewing) who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

82. Defendant SHALABI or Defendant HAWAII ISLAND EXPERIENCES, LLC. violated 47 U.S.C. § 227(c)(5) because Plaintiff received more than one telephone call and/or text message in a 12-month period made by or on behalf of Defendant SHALABI in violation of 47 C.F.R. § 64.1200, as described above.

83. Defendant SHALABI or Defendant HAWAII ISLAND EXPERIENCES, LLC. failed to obtain any prior express consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i), a "clear and conspicuous" disclosure informing the person signing that:

(A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing text messages using an automatic telephone dialing system; and

(B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

84. As a result of Defendant's conduct as alleged herein, Plaintiff suffered actual damages and, under section 47 U.S.C. § 227(c), is entitled, *inter alia,* to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

85. Defendant SHALABI or Defendant HAWAII ISLAND EXPERIENCES, LLC. used an ATDS to both send text messages and to dial Plaintiff's phone number to play its artificial prerecorded voice message.

86. By sending unsolicited text messages to Plaintiff's cellular telephone without prior express consent, and by utilizing an ATDS, Defendant SHALABI or Defendant HAWAII ISLAND EXPERIENCES, LLC violated 47 U.S.C. § 227(b)(1)(A)(iii).

87. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by Plaintiff.

88. Defendant SHALABI or Defendant HAWAII ISLAND EXPERIENCES, LLC violated 47 USC §227(b)(1)(A) by using an artificial prerecorded voice message and by sending generic unsolicited text messages with an ATDS, for which Plaintiff is entitled to $500 for each negligent violation and $1500 for each willful or knowing violation.

89. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, '*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*.'" The Report and Order, in turn, provides as follows:

"The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of

day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers."

90. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing call made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the

person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long-distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect

them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

91. Here, Defendant SHALABI or Defendant HAWAII ISLAND EXPERIENCES, LLC. sent Plaintiff Ewing multiple unsolicited text messages after he had submitted valid "STOP" and "BYE" requests.

92. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 et seq., Plaintiff is entitled an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

**SECOND CLAIM FOR RELIEF**
**Consumer Information Privacy Act**
**(Violation of CA Penal Code §632.7 and §637.2)**
**(Against Defendant SHALABI and Defendant HAWAII ISLAND EXPERIENCES, LLC.)**

93. Plaintiff Ewing repeats and realleges paragraphs 1 through 77 of this Complaint and incorporates them by reference.



26cv

94. The foregoing acts and omissions of Defendant SHALABI or Defendant HAWAII ISLAND EXPERIENCES, LLC constitute numerous and multiple knowing and/or willful violations of California's Invasion of Privacy Act.

95. As a result of Defendant's knowing and/or willful violations of PC §632.7 and §637.2, Plaintiff is entitled to statutory damages of $5,000 per call that was illegally recorded without Plaintiff's knowledge or consent.

96. Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Ewing, individually, prays for the following relief:

a) Damages as provided by statute and in the discretion of the Court;

b) An award of actual and/or statutory damages and costs plus treble damages if willful or knowing violations are shown;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) As a result of Defendant's negligent violations of 47 U.S.C. §227(b)(1), Plaintiff is entitled to and requests $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. 227(b)(3)(B);

e) An injunction requiring Defendant to cease all unsolicited calling activity that violates the TSR, the FTC Act and the TCPA, and to otherwise protect the interests Plaintiff Ewing;

f) $5,000 for each call the was illegally recorded without Plaintiff's consent,

g) for exemplary and punitive damages against Defendant in an amount to be determined with exactness at trial herein; and

h) Such further and other relief as the Court deems just and proper.

Dated this 27th day of January, 2026.

/s/ Anton Ewing
Anton A. Ewing, Plaintiff
(not a lawyer)



26cv